## WELLS AS AD. VS. FLETCHER AS GUARDIAN.

The administrator applied to the Probate Court for an order for the sale of the slaves or real estate of the deceased, to pay debts, showing that the debts unpaid, of which the amount of a decree against him for the widow's dower formed a part, exceeded the assetts, exclusive of the slaves and real estate: HELD, That as the personal estate, subject to the widow's dower, had been applied to the payment of debts generally, sho was equitably entitled to be reimbursed out of what remained of the estate: ·that neither reason nor equity required her to wait for the accruing rents and hires to pay off the sum decreed to her for dower.

In support of such application, the administrator may show, that since his last settlement with the Probate Court, he has paid other debts of the estate duly proven and allowed.

*Appeal from the Circuit Court of Pulaski County.*

Hon. WM. H. FEILD, Circuit Judge.

S. H. HEMPSTEAD, for the appellant. -

Mr. Justice SCOTT delivered the opinion of the Court.

This cause has been brought into this court by appeal from the Circuit Court of Pulaski county. It originated in the Probate Court of that county, and was an application there by the administrator, who is the appellant here, for an order for the sale of either lands or slaves, as the Probate Court might deem best, for the payment of debts against the estate of his intestate. The petitioner showed in his petition, verified by his affidavit, that all the personal estate of the intestate had been sold for the payment of debts, except three slaves, (the mother and two children,) and that certain lands, which he described also, and these slaves, were all the property of the estate remaining. He represented that lands were appreciating in value, and suggested that it would be most to the interest of all parties interested in the resi-

due of the estate, after the debts should have been paid, that these slaves, rather than lands, should be sold. He also represented that there were debts against the estate still due and payable, a specific schedule of which he presented with his petition, amounting to $939 70, and that there were not sufficient assets in his hands to pay the same: and that it was therefore necessary, either that lands or negroes should be sold, as the court might determine most proper. For proof of the necessity of an order of sale of one or the other species of property, to pay these debts, the petitioner referred to the records of the Probate Court, and to the papers of the estate on file therein, and stated that he had given notice, according to law, of his intended application at that term of the court, by public advertisement, a copy of which he presented with his petition, and prayed for an order of court accordingly.

In this schedule of outstanding debts, was a claim of Lidia Baldwin, the widow of the intestate, for the sum of $925 15, which had been decreed to her for dower in the personal estate, other than slaves, on the chancery side of the Circuit Court of Pulaski county.

Richard Fletcher, as guardian of the minor heirs of the intestate, appeared and objected to the application, alleging in substance:

1. That the assets in the hands of the petitioner were more than sufficient to pay the debts.

2. That the petitioner had not sold all the personal property of the estate, other than slaves.

3. That petitioner had not rendered a true account of his administration, exhibiting the precise amount of assets remaining in his hands. That he had not charged himself with the rent of lands, and had charged himself with only a part of the hire of the negroes. That the rent of land amounted to $175 50, as appeared by the proceedings in the chancery cause for dower, and the hire of negroes to $252.

4. That the petitioner had not exhibited with his petition a statement of the assets in his hands to pay debts.

5. That lands and slaves remaining after the assignment of dower are not subject to be sold to pay the decree for dower in the personal estate, other than slaves.

6. That this decree for dower is not a debt due by the estate.

7. That a sale of lands or slaves for the payment of debts, can only be made for such debts as were created previous to the death of the intestate, and for expenses of administration.

Upon the hearing in the Probate Court, the petitioner, after proving the publication of notice of his intended application, read the decree of the Chancellor against the estate for the widow's dower, which, among other things, directed "the said Stinson Wells, as administrator of the estate of Buford Baldwin, deceased, to forthwith pay and deliver unto the said complainant, (Lidia Baldwin,) the said sum of nine hundred and twenty-five dollars and fifteen cents, out of the assets of said estate, now on hand, or to come to his hands as such administrator;" and decreeing that he should pay all the costs out of said assets.

A number of the papers relating to the administration on file in the court, were also read in evidence, consisting of the inventories, appraisements and accounts that had been settled and filed, and the administrator himself, was, at the instance of Fletcher, examined on oath; from all of which, it substantially appeared that at the last settlement there was a balance against the administrator of                                    $ 2244 73
Deducting from which the appraised value of the
        slaves,                          ·              1900 00

Left the true nominal balance in his hands of          344 73
Which does not appear to have been realized in mo-
        ney, but apparently remained in various debts
        due the estate.
To this balance of $344 73, add negro hire, as found
        by the chancery court, the sum of $250, less
        $100 charged in administrator's account,        152 00

Rent of land as found in the chancery court, (the sum
    not being definitely stated in the administra-
    tor's account,)                                   178 50

            . Balance,                                   $ 675 23

It would make the total amount of assets remaining, upon the
supposition that all the debts due to the estate should be realized,
this balance of $675 23.

The Probate Court being satisfied from an examination of all
these matters that the assets remaining in the hands of the ad-
ministrator, were insufficient to pay off the debts, overruled all
the objections made by the guardian, and ordered a sale of the
negroes on a credit of twelve months; to which Fletcher took a
bill of exceptions and appealed to the Circuit Court. That court
finding error in the proceedings and judgment of the Probate
court, set aside and vacated the latter, and hearing the case, *de
novo*, refused the prayer of the petitioner, and he appealed to
this court.

In what these errors, so found by the Circuit Court consisted,
we are not advised.

In our opinion, so far from the record showing that the Pro-
bate Court erred as to the matter of fact, whether or not there
was a necessity to order a sale of either the real estate or the
slaves, it amply sustains that finding. In point of law, every
atom of the remaining property of the estate, both real and per-
sonal, was subject to the payment of the decree for the $925 in
favor of the widow. It was in lieu of what had been taken away
from her by the administrator, wrongfully, and applied in the
course of administration to liabilities against the estate generally.
Her rights, in point of law, were absolute, and paramount to
any rights of creditors of the estate. If, at the expense of these
rights of hers, the estate had been relieved of liabilities, she had
the highest degree of equity to be reimbursed out of what re-
mained of the estate, and which had been thus preserved by the
use of means that were both legally and equitably hers.

Nor was there any ground of reason or equity, upon which to insist that she should wait the slow proces of accruing rents and hires, to pay off the sum decreed to her by the Chancellor. A creditor of the estate could not have been rightfully subjected to such delay. Much more should she not be delayed for this, whose rights were prior, absolute and paramount.

Some of the objections urged by Fletcher, which seem to point to the *mode of proceeding* prescribed by the statute for the sale of real estate, would have some appearance of plausibility, if this had been a decree for the sale of real estate, instead of slaves as it was.

We think there is nothing in the record to show that the Probate Court, in this case, erred either in law or in fact. And if it had done so, when the Circuit Court undertook to try the case, *de novo*, the evidence offered by the administrator, to show that, in the interval between his last settlement (which showed the apparent balance of assets in his hands at the sum of $344 73,) and the day of the filing of his petition, he had paid, (as he had vouchers to show,) the further sum of $197 09 towards debts duly allowed and classed against the estate, ought not to have been rejected, as it appears by the bill of exceptions it was; because that evidence went to the vital question in the case, whether or not there was a necessity to order a sale of property for the payment of the claims against the estate.

The judgment of the Circuit Court will be reversed, and the cause remanded, with instructions to affirm the judgment of the Probate Court, and certify the same to the latter court, that another day may be therein appointed for the sale, that already fixed having passed.