## GRAHAM *v.* GRAHAM.

Opinion delivered November 28, 1927.

1. WILLS—FRAUD—JURISDICTION.—Equity has no jurisdiction to set aside a will for fraud or undue influence in its making, the legal remedy in such cases being adequate.

2. WILLS—FRAUD IN PROCURING PROBATE.—Evidence *held* not to establish that fraud was perpetrated on the probate court in procuring a will to be admitted to probate.

3. WILLS—VALIDITY OF ORDER ADMITTING WILL TO PROBATE.—An order of the probate court admitting a will to probate is not void in failing to contain an affirmative statement of all facts necessary to admit the will to probate, as it will be presumed that the court acted within its jurisdiction.

4. WILLS—COLLATERAL ATTACK ON PROBATE.—Where an order of the probate court admitting a will to probate was at most erroneous and not void, and no appeal was taken, a proceeding to set aside the order admitting the will to probate for fraud was a collateral attack.

5. COURT—JURISDICTION OF PROBATE COURT.—The probate court is a court of superior jurisdiction, and, within its jurisdictional rights, its judgments import absolute verity.

6. WILLS—VALIDITY OF ORDER ADMITTING WILL TO PROBATE.—An order of the probate court admitting a will to probate was not rendered void by failure to recite all the facts upon which the court acted, as the court, in admitting the will, was acting within its ordinary jurisdiction and upon the performance of prescribed conditions.

Appeal from Sebastian Circuit Court, Greenwood District; *J. Sam Wood*, Judge; affirmed.

STATEMENT BY THE COURT.

These two cases were consolidated on appeal because the same issues are involved in each case. In No. 113, Renaldo Earl Graham, a minor, by his mother and next friend, Sadie Graham, filed a petition in the probate court against W. B. Graham to set aside the judgment of the probate court allowing the will of W. E. Graham, deceased, to be admitted to probate. The petition to set aside the judgment admitting the will to probate was filed more than a year after the judgment of the probate court admitting the will to probate. The will was made an exhibit to the petition, and the body of it is as follows:

"Know all men to whom these presents may come, that I, W. E. Graham, being of sound and disposing mind and memory, knowing the uncertainties of life, and in my crippled condition it may come at any time, and desiring to dispose of my worldly affairs as I think right and just, do make and declare this to be my last will and testament.

"(1). I direct that at my death my executor hereinafter named pay my just debts, including my funeral expenses, with such protection and ornament to my grave as he may think right. (2). I give and bequeath to my former wife, Sadie Graham, one cent, and to her child, Renaldo Graham, born to her during the time we were husband and wife, I give and bequeath the sum of one dollar, in full of all demands against my estate. (3). I give and bequeath to my brother, R. A. Graham, one cent, and to my sister, Mrs. M. P. Spessard, the sum of $10, to be in full of all demands by them against my estate. (4). To my dear father, W. B. Graham, and my brother, L. O. Graham, I give and bequeath the residue of my estate, real, personal and mixed, for them to share and share alike, and suggest that my father control the same until my brother becomes twenty-one years old. (5). I nominate, constitute and appoint my father, W. B. Graham, the executor of my estate, and direct that he see that the bequests heretofore made be carried out.

"In testimony whereof I have hereunto set my hand this 29th day of September, 1917."

The judgment of the probate court admitting the will to probate reads as follows:

"On this day comes on for probate an instrument of writing purporting to be the last will and testament of W. E. Graham, deceased. And it appearing to the court from the testimony of Alvin NcNabb, the surviving subscribing witness to said will, that said instrument was signed at the time and place and by the person therein named, and that same was signed by the testator in the presence of both attesting witnesses to said instrument, and that said witnesses signed said instrument in the presence of said testator and in the presence of each

other, and that said testator declared it to be his last will and testament; that said testator, at the time of signing said instrument, was upwards of twenty-one years of age, and of sound and disposing mind and memory; and it further appearing that the testimony of B. L. Ware and Jess McConnell is sufficient to prove that the signature of Ezra Meek, deceased, the other attesting witness to said instrument of writing, is genuine; and it further appearing to the court that W. B. Graham, father of the testator, is named in said last will and testament as executor, and that he has filed a bond with good and sufficient security, the court being well and sufficiently advised in the premises. It is therefore considered, ordered, adjudged and decreed that said instrument be and the same is this day admitted to probate in common form as the last will and testament of W. E. Graham, deceased, and it is ordered that bond of said W. B. Graham be and the same is this day approved and hereby approved by the action of the clerk of this court, in vacation, of the 19th day of May, 1925, in issuing letters testamentary unto W. B. Graham.''

The grounds relied upon in the petition to set aside the order admitting the will to probate will be stated under appropriate headings in the opinion. Other facts appearing in the record will also be stated or referred to in the opinion. The probate court refused to set aside its order admitting the will to probate, and an appeal was duly prosecuted to the circuit court. The circuit court was of the opinion that the said petition should be dismissed, and judgment was entered accordingly. The case is here on appeal.

Case No. 114 was a petition by the same parties to quash the judgment of the probate court admitting said will to probate. The petition contains precisely the same allegations as the petition in No. 113. The circuit court sustained a demurrer to the petition, and it was adjudged that the petition should be dismissed. This case is also here on appeal.

*John D. Arbuckle* and *Dobbs & Young*, for appellant.
*Holland & Holland*, for appellee.

HART, C. J.   The record shows that the petition filed to set aside the judgment of the probate court admitting the will of W. E. Graham, deceased, to probate, was filed more than one year after said will was admitted to probate in common form.

In *Jenkins* v. *Jenkins,* 144 Ark. 417, 222 S. W. 714, it was held that a judgment admitting a will to probate in common form, as was done in the case at bar, is a final order or judgment, from which an appeal lies within twelve months after rendition thereof. It was further held that an infant heir will not be permitted to appeal from the probate in common form of his ancestor's will after the year provided by statute to appeal has expired, the statute containing no saving clause in favor of infants. In this connection it may be stated that the statute relating to appeals from the probate of wills contains no saving clause in favor of nonresidents or persons absent from the State or under disabilities.   See also *Morris* v. *Raymond,* 132 Ark. 450, 201 S. W. 116.   In the recent case of *Dunn* v. *Bradley* (Ark.), 299 S. W. 370, it was held that a probate court is a court of record, and its judgment, under the statute, is, after the lapse of the term, a final judgment until vacated or set aside in some manner authorized by law.

The force of these decisions is recognized by counsel for appellant in the case at bar, but it is claimed that the order of the probate court in question should be set aside because the probate of the will was obtained by fraud practiced upon the court.   The fraud alleged in the petition is that the testator did not have the mental capacity to execute a will at the time the purported will was signed by him.   It is further alleged that the instrument so probated was the result of undue influence upon the testator by his father, W. B. Graham, one of the principal beneficiaries in the will.   It is alleged that the undue influence consisted in W. B. Graham falsely representing to his son that Renaldo Earl Graham was not his son, but was the offspring of the adulterous conduct of his mother, Sadie Graham, while she was living with the testator as his

wife. Even a court of equity could not set aside a will on the grounds alleged. The reason is that equity has no jurisdiction to set aside a will for fraud in obtaining it. *Ewell* v. *Tidwell*, 20 Ark. 136. In *Gray* v. *Parks*, 94 Ark. 39, 135 S. W. 1023, it was again held that a court of equity has no jurisdiction to determine the validity of a will. The court said that the remedy at law for setting aside a will on account of any fraud or undue influence in procuring it was complete. The reason is that, under our Constitution, such jurisdiction is vested in probate courts. This rule was recognized in *Dunn* v. *Bradley, supra,* where it was held that equity had jurisdiction to set aside the judgment of a probate court admitting a will to probate only where fraud was practiced upon the court in obtaining the judgment.

In a case-note to 18 Ann. Cas., at page 807, it is said that it is a well established rule that, in the absence of statutory provisions therefor, a court of equity has no jurisdiction to set aside a will or its probate on the ground of fraud, and many cases are cited in support of the text.

In *Broderick's Will,* 21 Wall. (U. S.) 503, a comprehensive statement of the reasons for the rule was given by Mr. Justice Bradley as follows:

"Whatever may have been the original ground of this rule (perhaps something in the peculiar constitution of the English courts), the most satisfactory ground for its continued prevalence is that the constitution of a succession to a deceased person's estate partakes, in some degree, of the nature of a proceeding *in rem,* in which all persons in the world who have any interest are deemed parties, and are concluded, as upon *res judicata,* by the decision of the court having jurisdiction. The public interest requires that the estates of deceased persons, being deprived of a master, and subject to all manner of claims, should at once devolve to a new and competent ownership; and consequently that there should be some convenient jurisdiction and mode of proceeding by which this devolution may be effected with least chance of injus-

tice and fraud, and that the result attained should be firm and perpetual. The courts invested with this jurisdiction should have ample powers both of process and investigation, and sufficient opportunity should be given to check and revise proceedings tainted with mistake, fraud, or illegality. These objects are generally accomplished by the constitution and powers which are given to the probate courts, and the modes provided for reviewing their proceedings. And one of the principal reasons assigned by the equity courts for not entertaining bills on questions of probate is that the probate courts themselves have all the power and machinery necessary to give full and adequate relief.''

Again, it is contended that a fraud was practiced upon the court in obtaining the probate of the will by concealing from the court that Renaldo Earl Graham was a child of the testator, and that he and his mother were not residents of the State of Arkansas, and knew nothing about the application for the probate of the will by W. B. Graham. We have copied the will in our statement of facts, and item 2 expressly states that he gives to his wife, Sadie Graham, one cent, and to her child, Renaldo Earl Graham, born to her while she and the testator were husband and wife, the sum of one dollar, in full of all demands against his estate. Item 4 of the will gives to W. B. Graham and L. O. Graham, a brother of the testator, the rest of his property. Thus it will be seen that the will on its face shows the existence of Renaldo Graham, and the will of the testator that he should not participate in his estate. Then, too, there appears in the record a petition filed by Renaldo Earl Graham in the probate court, which admitted the will to probate, for a guardian to be appointed for said minor. The petition states that he is a minor of the age of eleven years, and resides with his mother in the city of Birmingham, in the State of Alabama. It is also alleged that Walter Graham was appointed executor of the estate of Earl Graham, deceased, and that he appears to be unfriendly to the child, Renaldo Earl Graham. This petition was filed on

the 17th day of May, 1926. The will was admitted to probate by order of the probate court, on June 15, 1925. Thus it will be seen that the petition for the appointment of a guardian was filed with the probate court before the expiration of a year from the time that the will was admitted to probate. Under these circumstances, it cannot be said that the existence of the minor was concealed from the probate court, and that fraud in this respect was practiced upon the court in procuring the will to be admitted to probate.

The principal contention of counsel for the appellant is that the order of the probate court admitting the will to probate was void because it does not contain an affirmative statement of all the facts requisite to admit a will to probate. The will was dated at Midland, Arkansas, September 25, 1917, and purports to have been witnessed by Alvin McNabb and Ezra Meeks. The affidavit of Alvin McNabb appears in the record to prove the will. Ezra Meeks had died, and proof was made of his signature. At most it could only be said that the order admitting the will to probate is erroneous, and not void. No appeal was taken from the order admitting the will to probate within the time prescribed by law, and this becomes a collateral attack on the judgment. It is well settled in this State that the probate court is a court of superior jurisdiction, and, within its jurisdictional rights, its judgments import absolute verity, the same as other superior courts. The rule in such cases is that, where the record is silent with respect to any fact necessary to give the court jurisdiction, it will be presumed that the court acted within its jurisdiction. *Apel* v. *Kelsey,* 52 Ark. 341, 12 S. W. 703, 20 Am. St. Rep. 183; *Flowers* v. *Reece,* 92 Ark. 611, 123 S. W. 773, and cases cited; and *Massey* v. *Doke,* 123 Ark. 211, 185 S. W. 271.

This rule with respect to probate courts being, in general, courts of superior jurisdiction, is also recognized, but it is contended that the facts alleged in the petition bring the case within the exemption to the rule. In *Hindman* v. *O'Connor,* 54 Ark. 627, 16 S. W. 1052, 13 L.

R. A. 490, the court quoted with approval from _Galpin_ v. _Page,_ 18 Wall. (U. S.) 350, 21 L. ed. 959, the following:.

"But, where the special powers conferred are exercised in a special manner, not according to the course of the common law, or where the general powers of the court are exercised over a class not within its ordinary jurisdiction, upon the performance of prescribed conditions, no such presumption of jurisdiction will attend the judgment of the court. The facts essential to the exercise of the special jurisdiction must appear in such cases upon the record."

In the application the court said that the power to remove the disabilities of minors is a special power conferred upon the circuit court, and is to be exercised in a summary manner and not according to the course of the common law. Hence it was held that the order removing the disabilities in that case was void because it did not show that they were residents of the county in which the circuit court making the order was held. Again, in _Oliver_ v. _Routh,_ 123 Ark. 189, 184 S. W. 843, it was held that the authority of the probate court to grant specific performance of an executory contract to convey land against the executor or administrator of a decedent is a special power conferred upon the probate court by statute, and such power is to be exercised in a special manner, and not according to the course of the common law. Hence it was said that, in all such cases, the facts essential to the exercise of the special jurisdiction must appear from the record.

Again, in _Ex parte Tipton,_ 123 Ark. 389, 184 S. W. 798, the court said that, under our Constitution relative to homesteads, it was intended to preserve for the minor the homestead exemption of the parents after their death and to prevent the sale thereof for the debts of the parents during the minority of the children. Hence it was held that the probate sale of the homestead by the guardian, in cases where there were debts, is absolutely void. In other words, the court held that the jurisdiction of the probate court to sell the homestead of the minor should

show that there were no debts, and that, the record being silent on that point, the order of sale was void. The reason is that, when the provision of our Constitution relative to the exemption of homesteads from sale for the payment of debts was considered in connection with our previous decisions on the question, the court considered that the probate court was acting in the premises upon the performance of prescribed conditions, and that the record should affirmatively show that there were no debts. In short, it was held that a finding that there were no debts was a condition precedent to the exercise of jurisdiction by the probate court in the sale of homesteads, and that the facts essential to the exercise of the jurisdiction must appear upon the face of the record.

In the case at bar the probate court, in admitting the will to probate, was acting under the powers given it by the Constitution, and over a question within its ordinary jurisdiction and upon the performance of prescribed conditions. Hence it was not necessary that all the facts upon which the court acted should appear upon the face of the record. If the court acted erroneously in the premises, the remedy would be by appeal; but, under the principles of law above announced, it could not be said that the judgment was absolutely void. The matters involved in the appeal and in the application for a writ of certiorari to quash the judgment of the probate court have been decided adversely to the contention of counsel for appellant in *Dunn* v. *Bradley, supra,* and no useful purpose could be served by again entering into a review of our former decisions cited and referred to in that case.

The result of our views is that the judgment of the circuit court in each case was correct, and will therefore be affirmed.